CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 24 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| R. SCOTLUND VAILE, *Plaintiff,* | CIVIL NO. 6:07cv00011 |
| v. | MEMORANDUM OPINION AND ORDER |
| MARSHALL S. WILLICK, ET AL., *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (docket entry no. 18) pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has sufficiently alleged claims of defamation and intentional infliction of emotional distress, I will GRANT in PART and DENY in PART Defendants' motion to dismiss.

## I. BACKGROUND

This action arises out of a series of letters sent by the defendants, Marshall S. Willick, Richard L. Crane, and The Willick Law Group, to the Washington and Lee University School of Law ("Washington & Lee"), the American Bar Association ("ABA"), and Plaintiff's 2006 summer employer,[1] regarding Plaintiff's fitness to practice law.[2] In these letters, Defendants advised that they represented Plaintiff's ex-wife in litigation against Plaintiff, with claims ranging from International Child Abduction to torts committed against his ex-wife and children, and that Plaintiff had been "found guilty of multiple violations of State and Federal law, including kidnaping [sic], passport fraud, felony non-support of children, and violation of RICO"

---

[1] Neither Plaintiff nor Defendants identify the name of this employer, stating only that Defendants "communicated to Vaile's employer in Dallas, Texas" in June of 2006.

[2] Defendants sent the first letter to Washington & Lee on March 24, 2006, "communicated" with Plaintiff's employer in June 2006, and sent the final letters to the ABA and Washington & Lee on April 13, 2007.

in a Nevada federal district court. (Am. Compl. ¶ 11.) As a result, Defendants urged Washington & Lee to cease all "support or aid" to Plaintiff and "reconsider his fitness for continued enrollment," and, after Washington & Lee failed to act, advised the ABA to remove its accreditation of Washington & Lee for "knowingly admit[ting] students with Mr. Vaile's credentials." (Am. Compl. ¶ 11, 22.)

In response, Plaintiff filed this action for $1,000,000 in compensatory and punitive damages, respectively, in Rockbridge County Circuit Court on March 30, 2007, alleging that (1) the letter to Washington & Lee was false and defamatory; (2) Defendants intentionally inflicted emotional distress on Plaintiff by sending these communications to his employer; and (3) that this conduct represented an unfair and illegal debt collection practice under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*. Defendants removed the case to this Court on May 14, 2007, and subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff amended his Complaint on June 14, 2007 and added both a second claim of defamation for the April 13, 2007 letter to the ABA and a claim of conspiring to injure his professional and business interests under the Virginia Business Conspiracy Act, Va. Code Ann. §§ 18.2-499, -500. Defendants have again filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the statements made in the March 24, 2006 and April 13, 2007 letters were truthful and, accordingly, the two claims of defamation fail as a matter of law because truth is a complete defense to a claim of defamation. Moreover, Defendants argue that if the letters were not defamatory, Plaintiff cannot establish claims of intentional infliction of emotional distress or conspiracy under the Virginia Business Conspiracy Act.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

2

sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Therefore, while Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face;" plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly*, 127 S.Ct. at 1974.

### III. DISCUSSION

Although Plaintiff has asserted five separate claims, four of these claims are dependant upon the letters being false and defamatory. Thus, I will first address whether Defendants' March 24, 2006 and April 13, 2007 letters were defamatory in nature.

*A. Defamation*

Under Virginia law, a claim of defamation requires a "(1) publication (2) of an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). A statement is not actionable merely because it is false; it must also be defamatory, meaning it must "tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight-*

3

*Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (quoting Restatement (Second) of Torts § 559); *Jordan*, 612 S.E.2d at 206. If a statement is true, however, or substantially accurate, there can be no action for defamation. *Jordan*, 612 S.E.2d at 206; *Saleeby v. Free Press, Inc.*, 91 S.E.2d 405, 407 (Va. 1956). Further, statements of opinion are ordinarily not defamatory as such statements cannot be objectively classified as true of false. *Jordan*, 612 S.E.2d at 206. As for the requisite intent required, the defendant may be found liable where the plaintiff is a private individual if the defendant knew the statement to be false or negligently failed to ascertain whether the statement was false. *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985).

At the motion to dismiss stage, a plaintiff's allegation of factual falsity is accepted as true. *Chapin*, 993 F.2d at 1092. Therefore, the threshold inquiry is whether Defendants' letters were defamatory. The law in Virginia for determining whether a statement is defamatory requires "the potential defamatory meaning of a statement[ to] be considered in light of the plain and ordinary meaning of the words used in context as the community would naturally understand them." *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999). A defamatory charge may be explicit or by "inference, implication or insinuation." *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 592 (Va. 1954). Thus, I must look not only to the actual words spoken, but also to all inferences fairly attributable to them. *Wells*, 186 F.3d at 523.

In this case, Plaintiff alleges that Defendants' letters defamed him by stating that Plaintiff had been "found guilty of multiple violations of State and Federal law, including kidnapping, passport fraud, felony non-support of children, and violation of RICO." (Am. Compl. ¶ 11.) These allegations, taken in the context of their ordinary and common acceptance as the average citizen would understand them, and with every fair inference resolved in Plaintiff's favor, adequately satisfy the requirements of Federal Rule of Civil Procedure 12(b)(6). The average citizen could deduce from these letters that Plaintiff had been charged and convicted of the

4

crimes of kidnapping, passport fraud, non-support of his children, and racketeering.[3] Thus, the letters are capable of being defamatory under Virginia law.[4] Indeed, these statements could potentially be construed as defamatory per se, given that they arguably (1) impute the commission of a criminal offense punishable by imprisonment in state or federal custody; (2) impute an unfitness to perform the duties of being an attorney; and (3) prejudice Plaintiff in his profession. *Carwile*, 82 S.E.2d at 591 (listing the four categories of defamatory words that are actionable without a showing of special damages). Accordingly, Plaintiff has sufficiently alleged that Defendants' letters constituted false and defamatory statements.

In their defense, Defendants argue that these letters are substantially true and therefore, do not subject them to liability. Specifically, Defendants represent that these letters convey the findings of fact of the U.S. District Court of Nevada, and offer the court's opinion as proof of their truthfulness. Ordinarily, a court may only consider documents outside the pleadings on a Rule 12(b)(6) motion to dismiss if the motion is treated as one for summary judgment pursuant to Rule 56 and notice is given to the parties. *See* Fed. R. Civ. P. 12(b). There are limited exceptions to this rule, including the discretion to consider documents attached to the complaint, those incorporated by reference, and matters of public record, that permit a court to look to external documents without converting the Rule 12(b)(6) motion to a Rule 56 motion for summary judgment. *See, e.g., Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004)

---

[3] Although Defendants argue that the word "guilty" may be used in either civil or criminal contexts, Virginia law requires the Court to consider its "plain and ordinary meaning . . . in [the] context [that] the community would naturally understand [it]." *Wells*, 186 F.3d at 523. If a word has many different meanings, it is the responsibility of the trier of fact to determine the most pertinent definition in light of its context. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). At this stage of the litigation, I must resolve every inference in Plaintiff's favor; therefore, I find, for the purposes of this motion to dismiss, that the average citizen could conclude "guilty" to denote criminal conduct.

[4] The April 13, 2007 letter to the ABA is arguably a closer question because it omits the word "guilty," stating only that Vaile was "found to have committed multiple violation [sic] of State and Federal law, including kidnaping [sic], passport fraud, felony non-support of children, and violation of RICO." (Am. Compl. ¶ 22.) Nevertheless, I find this letter is also capable of being defamatory under Virginia law. This sentence, read in the context of the letter as a whole, could be construed to suggest that Vaile was charged and convicted of criminal conduct, thereby making it defamatory.

5

(citations omitted). In this case, the attached document, the opinion of the U.S. District Court of Nevada, is a matter of public record, and I therefore have discretion to consider it without notice. *See Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 2d* § 1357). Yet I may only consider the *existence* of the opinion, not the truth of the facts recited therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999). Therefore, I cannot determine whether Defendants' letters were substantially true at this time. Accordingly, Defendants' request to dismiss Plaintiff's claims for defamation will be denied.

### B. Intentional Infliction of Emotional Distress

In Count Three of the Complaint, Plaintiff alleges that Defendants' letters constituted an intentional infliction of emotional distress. In response, Defendants argue that there is no factual basis for this claim and, moreover, that Plaintiff has failed to allege conduct that would be considered outrageous under Virginia law or emotional distress so severe that Virginia law would permit recovery.

This claim arises under diversity jurisdiction, which requires a federal court to apply the law of the state in which it sits. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). On procedural issues, however, federal law governs. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Therefore, a claim for the intentional infliction of emotional distress, where the plaintiff alleges no physical injury as in this case, requires that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) a causal connection exists between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007). But unlike in Virginia, which requires a plaintiff to plead "with the requisite degree of specificity" all facts that are necessary

6

to establish his claim, a complaint in federal court need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" under federal pleading rules. Fed. R. Civ. P. 8(a)(2). As a result, the question is not whether Plaintiff's allegations could withstand demurrer in Virginia court, but whether he has satisfied the requirements of Rule 8(a). *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005) (holding that the plaintiff had satisfied the requirements of Rule 8(a) in pleading only "severe emotional distress" even though such limited pleading is insufficient in Virginia courts).

In his Complaint, Plaintiff alleges that Defendants intentionally and recklessly sent false and defamatory communications to Washington & Lee, the ABA, and his employer in Dallas, Texas, which caused "severe emotional distress that no reasonable person could be expected to endure." (Am. Compl. ¶ 37.) Specifically, Plaintiff claims that Defendants intentionally and recklessly engaged in a pattern of false and defamatory communications with his employer and with his school, and that these communications were intended to terminate his employment and his enrollment in law school. Accepting these allegations as true, these false and defamatory letters—attempts to terminate Plaintiff's enrollment in law school, any scholarships he may have, and his employment—could be considered conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991), as required by Virginia law.[5] *See Caputo v. Prof'l Recovery Servs., Inc.*, 261 F. Supp. 2d 1249, 1267 (D. Kan. 2003) (holding that false accusations of federal offenses is extreme and outrageous conduct); *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 768 (Ill. 1976) (explaining that threats of contacting a person's employer and endangering their employment is

---

[5] Defendants attempt to excuse their conduct by relying upon Virginia Rule of Professional Conduct 8.3, which requires lawyers to inform the appropriate professional authority if they have reliable information that a lawyer has violated the Rules of Professional Conduct in a way that could impact his or her fitness to practice law. Rule 8.3. This argument seems disingenuous at best, considering that Plaintiff had not been admitted to the Virginia State Bar, that Defendants are not members of the Virginia State Bar, and that the appropriate professional authority would be the Virginia State Bar, not the ABA or Washington & Lee.

7

extreme and outrageous conduct). Moreover, Plaintiff claims this conduct resulted in "severe emotional distress that no reasonable person could be expected to endure." (Am. Compl. ¶ 37) As such, Plaintiff adequately states a claim of relief for intentional infliction of emotional distress, and I will deny Defendants' motion to dismiss this claim.

*C. Virginia Business Conspiracy*

Count IV alleges that defendants Willick and Crane acted in concert to injure Plaintiff's professional business interests in violation of the Virginia Business Conspiracy Act, Va. Code Ann. §§ 18.2-499 *et seq*. Defendants have moved to dismiss this Count, arguing that no conspiracy exists because Crane and Willick are attorneys and agents of The Willick Law Group and under the intra-corporate immunity defense, employees of a company cannot conspire with one another. Further, Defendants argue that the claim fails because Plaintiff has not alleged an injury that is compensable under the statute.

The claim of business conspiracy requires "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 266 (W.D. Va. 2001) (citations omitted). However, a corporation cannot conspire with its agents, and agents, acting within the scope of their agency, cannot conspire with one another. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386–87 (Va. 1996); *see also Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987). This type of conspiracy is a legal impossibility because the law does not treat the agents as separate persons, but rather as part of a single entity, the corporation, which cannot conspire with itself. *Charles E. Brauer Co.*, 466 S.E.2d at 387.

In this case, Plaintiff claims that Defendants Willick and Crane acted in concert, conspiring to injure his professional and business relationships. These defendants act as attorneys and agents of the defendant, The Willick Law Group. As a result, Willick and Crane

8

cannot legally conspire with one another unless Plaintiff can establish that they were not acting within the scope of their agency. *Fox*, 362 S.E.2d at 708. Because Plaintiff has not alleged any such facts, his claim for business conspiracy must fail. Moreover, Plaintiff's claimed injury is future, speculative business harm—diminished earning potential, limited professional abilities, and reduced professional and business potential—that is unprotected under the Virginia Business Conspiracy Act. *See Warner*, 149 F. Supp. 2d at 267–68. Plaintiff was a student at Washington & Lee at the time of Defendants' conduct and therefore, did not have a profession or business within the scope of § 18.2-499. Accordingly, I must dismiss Plaintiff's claim for business conspiracy.

*D. Unfair Debt Collection*

In Count V, Plaintiff alleges that Defendants' communications violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), as these communications were sent in furtherance of their attempt to collect court ordered attorneys' fees. (Am. Compl. ¶ 43.) Defendants argue that this claim should be dismissed because (1) the communications are exempt under the FDCPA because they were "reasonably necessary to effectuate a postjudgment judicial remedy," 15 U.S.C. § 1692c(b); (2) Defendants do not satisfy the definition of debt collectors or creditors under the FDCPA; and (3) their communications did not pertain to consumer debt as defined by the FDCPA.

The FDCPA is designed to prohibit abusive debt collection practices, including conduct designed to "harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, and the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The threshold inquiry for a FDCPA claim is whether the alleged conduct was used in an attempt to collect a "debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–88 (4th Cir. 1994). The Act defines the term "debt" as

9

"any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The Act does not define "transaction," however, but the case law suggests that a "transaction" must involve some kind of business dealing or obligation for consumer-related goods or services. *See Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir 1997).

In the instant case, Plaintiff has not alleged a debt subject to the Act. Instead, Plaintiff alleges that Defendants contacted his employer in an attempt to collect court ordered attorneys' fees. Any debt owed by Plaintiff to Defendants, whether the result of a court order or by the commission of a tort, would not implicate the FDCPA because it does not arise from a consumer transaction. *See Turner*, 362 F.3d at 1228 (holding that a debt obligation arising from a tort is not subject to FDCPA); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371–72 (11th Cir. 1998) (same); *Mabe*, 32 F.3d at 88 (holding that child support arising from a court order is not a debt under the FDCPA). As a result, the FDCPA is not applicable to Plaintiff's circumstances. Accordingly, Plaintiff's claim for unfair debt collection practices must be dismissed.[6]

### E. Punitive Damages

Last, Defendants argue that the Amended Complaint does not state a claim for punitive damages under Virginia law, which requires willful or wanton conduct or a reckless disregard of the consequence of one's actions, *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003), and that it exceeds the statutory cap of $350,000, Va. Code Ann. § 8.01-38.1. Although an ad damnun

---

[6] I find Defendants' other arguments to dismiss this claim difficult to accept. While the FDCPA does exempt communications "reasonably necessary to effectuate a postjudgment judicial remedy," 15 U.S.C. § 1692c(b), it is difficult to understand why a creditor would contact a debtor's employer and call into question his fitness for continued employment. If the debtor were to be terminated, that would make effectuating the court order more difficult, not less. Nevertheless, I need not consider this argument as Plaintiff has not alleged a "debt" protected under the Act.

10

serves little practical purpose in a contested case, I shall strike any claim for more than the applicable statutory cap. *See Paul v. Gomez*, 190 F.R.D. 402, 403 (W.D. Va. 2000). As for Defendants' other argument, there is no heightened pleading standard for punitive damages, only a "short and plain statement of the claim" under Federal Rule of Civil Procedure 8(a). *Id.* Plaintiff has alleged that Defendants acted with actual malice in sending the false and defamatory letters, meaning Defendants published the statements with knowledge of their falsity or with reckless disregard for the truth. These allegations plainly state a claim for punitive damages. *See Gertz v. Welch*, 418 U.S. 323, 349–50 (1974) ("States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth."). Accordingly, I will deny Defendants' motion to dismiss Plaintiff's request for punitive damages.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (docket entry no. 18) is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss Counts I, II, and III, the claims for defamation and intentional infliction of emotional distress, is DENIED. The motion to dismiss is GRANTED with respect to Counts IV and V, the claims for business conspiracy and unfair debt collection practices. In addition, any claim for punitive damages in excess of $350,000 is STRICKEN. Furthermore, Defendants' earlier motion to dismiss (docket entry no. 3) is DENIED as MOOT.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to both parties.

11

ENTERED: /s/ Norman K. Moon
United States District Judge

January 24, 2008
Date