CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 14 2008

JOHN F. CORCORAN, CLERK
BY: /s/ J. Jaralee
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| R. Scotlund Vaile,<br><br>*Plaintiff,*<br><br>v.<br><br>Marshal S. Willick, et al.,<br>*Defendants.* | CIVIL ACTION NO. 6:07cv00011<br><br><u>MEMORANDUM OPINION AND ORDER</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross-motions for summary judgment [Docket #38, #41]. Plaintiff argues in his motion that Defendants published false statements in a series of letters sent to Washington & Lee University School of Law and the American Bar Association that they knew to be untrue and that the letters were sent in malice and with an intent to defame. Defendants argue in opposition that the statements in the letters were materially true and represent part of a judicial opinion issued by the United States District Court for the District of Nevada. For the reasons that follow, the Court will GRANT in PART Plaintiff's motion for summary judgment because the letters are defamatory *per se*, but will DENY in PART because the letters may be privileged depending on whether the letters materially departed from the information within the judicial opinion of the Nevada District Court. The Court will also GRANT in PART Defendants' motion for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress as Plaintiff has not offered any evidence to support his claim, but will DENY in PART because the issue of whether Defendants' letters were privileged is an issue for a jury to decide.

## I. BACKGROUND

This matter is the latest in a series of disputes between the plaintiff, R. Scotlund Vaile

("Vaile"), and the defendants, Marshall S. Willick ("Willick") and Richard L. Crane ("Crane"). Willick and Crane are members of the Willick Law Group ("WLG"), a Nevada law firm that specializes in family law including, among other things, divorce, annulments, child custody visitation, and child support. Willick and Crane represented Cisilie Vaile Porsboll, Vaile's ex-wife, and Kaia Louise Vaile and Kamilla Jane Vaile, his children, in a series of lawsuits in state and federal courts in Nevada to recover damages from Vaile's removal of the children from their mother's custody without her consent.

The latest suit occurred in the United States District Court of Nevada before the Honorable Roger L. Hunt. The matter was scheduled for trial on February 27, 2006, but Vaile notified the court on February 21, 2006, that he intended to cease his defense and that he would not oppose an eventual judgment entered against him. Judge Hunt issued his decision on March 13, 2006, and awarded Vaile's ex-wife and children damages in the amount of $688,500.00 and attorneys' fees and costs of $272,255.56.

At the time of the Nevada litigation, Vaile was a student at Washington & Lee University School of Law ("W&L") and subsequently graduated in May 2007. On March 24, 2006, Willick sent a letter to W&L that advised that Vaile had been "found guilty of multiple violations of State and Federal law, including kidnaping, passport fraud, felony non-support of children, and violation of RICO." Willick concluded that W&L must be unaware of Vaile's "history" because "[i]t would be astounding if your institution would willingly countenance association with such an individual." Willick attached Judge Hunt's March 13, 2006 decision to his letter and urged W&L to "reconsider [Vaile's] fitness for continued enrollment." He further advised that "no form of federal state, or private money should be used for the support or aid of this individual."

W&L seemingly took no action and, as a result, Crane sent a letter to the American Bar

2

Association ("ABA") to inform it of W&L's recalcitrance. Crane advised the ABA that Vaile was enrolled at W&L and that "[i]t baffled [the Willick Law Group] that a law school would admit a student found to have committed multiple violation [sic] of State and Federal law, including kidnaping, passport fraud, felony non-support of children, and violation of RICO." Crane attached Judge Hunt's March 13, 2006 decision to his letter, as well as the March 24, 2006 letter to W&L, and called for the ABA to rescind W&L's accreditation because it "knowingly admit[s] students with Mr. Vaile's credentials" and "seem[s] to have little concern" of his conduct because he "is still a student at the school."

Vaile filed this action on March 30, 2007, and alleged, among other things, that Willick's letter to W&L was false and defamatory and that Willick and Crane sent the letters to inflict severe emotional distress upon him. Vaile later added a second claim for defamation because of Crane's letter to the ABA. Vaile also alleged that Willick and Crane violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, by their conduct and that Willick and Crane conspired to injure his professional and business interests under the Virginia Business Conspiracy Act, Va. Code Ann. § 18.2-499, -500, but these claims were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief could be granted.

Vaile filed the pending motion for summary judgment and argues that Willick and Crane sent the letters to W&L and the ABA with malice and an intent to defame. Vaile further argues that he has never been found guilty of any state or federal laws, and, therefore, the statements in the letters are false and defamatory because they suggest he has been convicted of criminal offenses. In response, Willick and Crane argue that the letters are true or, at worst, substantially true, and do not necessarily suggest a criminal conviction. Willick and Crane assert that the statements, read as a whole with the letters and Judge Hunt's decision, cannot be construed as defamatory *per se* because

3

they represent the findings of Judge Hunt in his March 13, 2006 decision. Willick and Crane also argue that Vaile is unable to produce any evidence of severe emotional distress to support his claim for intentional infliction of emotional distress and, therefore, that this claim also fails.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The Court does not weigh the evidence or determine the truth of the matter when considering a motion for summary judgment. *Anderson*, 477 U.S. at 249. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party can establish such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324. Summary judgment is appropriate if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The nonmoving party may not rest upon mere allegations, denials of the adverse party's pleading, or mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact.").

4

If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). Indeed, the trial judge has an affirmative obligation to "prevent 'factually unsupported claims and defenses' from proceeding to trial," *Anderson*, 477 U.S. at 249, and there is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III. DISCUSSION

#### A. The Letters to W&L and the ABA Are Defamatory Per Se

The elements of defamation[1] under Virginia law are (1) publication of (2) an actionable statement with (3) the requisite intent. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (citations omitted). A statement is not "actionable" simply because it is false; it must also be defamatory, meaning it must "tend so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* quoting (Restatement (Second) of Torts § 559). The issue of whether a statement is actionable is to be determined by the Court as it is a matter of law. *See Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 (Va. 1998).

Under Virginia law, it is defamatory *per se* to make false statements that among other things, (1) impute the commission of a criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished; (2) impute that a person is unfit to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment; or (3) prejudice a person in his or her profession or trade. *Shupe v. Rose's*

---

[1] Virginia does not distinguish between libel, defamation by published writing, and slander, defamation by speech, unlike most states. *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981).

5

*Stores, Inc.*, 192 S.E.2d 766, 767 (Va. 1972). If a statement is defamatory *per se*, Virginia law presumes that the plaintiff suffered actual damage to his reputation and, therefore, no proof of damages is required. *Fleming*, 275 S.E.2d at 636. The plaintiff still must establish the requisite intent, however, by a showing that the defendant knew the statement to be false or negligently failed to ascertain its truthfulness. *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 852 (Va. 1985). Punitive damages, on the other hand, require a showing of actual malice on the part of the defendant. *Gov't Micro Res., Inc. v. Jackson*, 624 S.E.2d 63, 70 (Va. 2006) (noting that a plaintiff must prove actual malice by clear and convincing evidence that the defendant either knew the statements were false at the time he made them, or that he made them with a reckless disregard for the truth).

The allegedly defamatory meaning of a statement is to be considered in light of the plain and natural meaning of the words used in the context as the community would naturally understand them. *Wells v. Liddy*, 186 F.3d 505, 523 (4th Cir. 1999). Words may be defamatory by their direct and explicit terms and also indirectly, "and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." *Carwile v. Richmond Newspapers*, 82 S.E.2d 588, 592 (Va. 1954). Because a defamatory charge may be made "by inference, implication or insinuation," the Court must look not only to the actual words spoken, but also to all inferences fairly attributable to them. *Id.* Nevertheless, the meaning of the allegedly defamatory words cannot, by innuendo, be extended beyond their ordinary and common acceptation. *Id.*

### 1. The Statements Within the Letters Impute the Commission of a Crime

Words that impute the commission of a crime "punishable by imprisonment in a state or federal institution" or "regarded by public opinion as involving moral turpitude" are defamatory *per se*. *Great Coastal Express, Inc.*, 334 S.E.2d at 850. The words need not establish all the elements

6

of the offense imputed, only that a person committed a felony which he did not commit. *Schnupp v. Smith*, 457 S.E.2d 42, 46 (Va. 1995). Words that impute the commission of a felony are defamatory even if the individual committed another felony of the same general character. *James v. Powell*, 152 S.E. 539, 543 (Va. 1930) (finding newspaper liable for libel when it stated that the plaintiff was charged with both murder and robbery when he was charged only with murder).

In this case, the statements within Willick and Crane's letters to W&L and the ABA are "actionable statements" because they impute the commission of a crime upon Vaile that he did not commit. The statements, taken in their plain and popular sense in which the average person would naturally understand them, denote that Vaile was found "guilty" of the crimes of kidnaping, passport fraud, felony non-support of children, and RICO. Technically, a person may be charged with civil kidnaping and racketeering, but passport fraud and felony non-support of children are punishable only as criminal offenses and likely result in imprisonment. *See* 18 U.S.C. § 228 (stating that a person who fails to pay a child support obligation may be imprisoned for up to two years or fined); 18 U.S.C. § 1542 (stating that a person who makes a false statement to acquire a passport, either for his own use or the use of another, may be imprisoned for up to 10 years or fined).

*A. Willick's Statement that Vaile Had Been Found "Guilty" Is Defamatory Per Se*

The statement in Willick's letter—that Vaile had been found "guilty" of multiple violations of State and Federal law, including kidnaping, passport fraud, felony non-support of children, and violation of RICO—undoubtedly would be understood by those that heard or read it as charging Vaile with the commission *and* conviction of numerous crimes. Willick argues that the word "guilty" applies in both criminal and civil contexts because it is defined as having committed not only a crime, but also a reprehensible act, including a tort or fault. *See Black's Law Dictionary* 637 (5th ed. 1979). The fact that "guilty" applies civilly notwithstanding, the use of the word "felony"

7

alongside the word "guilty," as well as stating that someone is "guilty" of an offense that only applies in a criminal context, requires the Court to apply the word "guilty" in this sentence in only its criminal context. *See Burgess v. United States*, 128 S.Ct. 1572, 1577 (2008) (noting that the term "felony" is commonly defined to mean "a crime punishable by imprisonment for more than one year"); *Black's Law Dictionary* 555–56 (5th ed. 1979) (defining "felony" as "[a] serious crime usu[ally] punishable by imprisonment for more than one year or death"); *see also Webster's Third New Int'l Dictionary* 836 (1976) (defining "felony" as "any crime for which the punishment in federal law may be death or imprisonment for more than one year"). In addition, it is questionable that an average listener or reader would interpret "kidnaping" and "RICO" in their civil context given their placement alongside the crimes of "passport fraud" and "felony non-support of children."[2] Moreover, Willick's subsequent statement that questioned why W&L "would willingly countenance with such an individual" if it knew of his "history," in conjunction with his earlier statement of Vaile's offenses, intimates that Vaile is a criminal of such ill repute with which one would not willingly associate. Accordingly, the Court finds that the March 24, 2006 letter is defamatory *per se* because it imputes the commission and conviction of a crime to Vaile.

*B. Crane's Statement that Vaile Had Committed Violations of Law Is Defamatory Per Se*

Similarly, the statement in Crane's letter—that Vaile had been found to have "committed" multiple violations of State and Federal law, including kidnaping, passport fraud, felony non-support of children, and violation of RICO—would also be understood by those that heard or read it as charging Vaile with the commission, and presumably the conviction, of numerous crimes. The statement in Crane's letter is nearly identical to the defamatory statement in Willick's letter, but

---

[2]This assumes, of course, that an average person would know that a person can be held civilly liable for kidnaping and RICO and that they are not exclusively criminal offenses, which the Court believes to be a dubious proposition.

8

Crane did alter one key word—changing the word "guilty" in Willick's letter to "committed." Nevertheless, the acts of passport fraud and felony non-support of children are solely criminal acts and, as explained above, the word "felony" can only mean a serious criminal act. Moreover, the words "commit" literally means, among other things, to "perpetrate a crime." *Black's Law Dictionary* 248 (5th ed.1979); *see also Webster's Third New Int'l Dictionary* 457 (1976) (defining "commit" to mean to "do, perform <convicted of committing crimes against the state>"). Therefore, by saying that Vaile had been "found" to have "committed" multiple violations of State and Federal law, Crane suggests that a judge or jury has held that Vaile did perpetrate a series of crimes. *Black's Law Dictionary* 568 (5th ed. 1979) (defining "find" as "[t]o determine a fact in dispute by verdict or decision," *i.e.*, to find guilty); *see also Webster's Third New Int'l Dictionary* 852 (1976) (defining "find" as "to arrive at a conclusion"). And, much like in Willick's letter, a reader is unlikely to interpret the words "kidnaping" and "RICO" in their civil context when read in conjunction with a person being "found" to have "committed" the felonies of passport fraud and non-support of children. As a result, the Court finds that the statement in the April 13, 2007 letter is also defamatory *per se* because it imputes the commission and conviction of a crime to Vaile.

### 2. The Letters Also Impute an Unfitness to Study or Practice Law

Further, Willick and Crane's letters are defamatory *per se* as a whole because they suggest Vaile is unfit to continue his studies or otherwise lacks the integrity to continue in the study of law. The study and practice of law is an honorable profession and an individual that has committed or has been convicted of a crime may be found to lack the honesty, trustworthiness, diligence, or reliability required of an applicant to be admitted to the bar. *See, e.g.*, Rules of the Virginia Board of Bar Examiners, § III, 2. Vaile had not yet graduated from W&L or sat for the bar, but he was still subject to the same obligation to prove that he could perform the obligations and responsibilities of

9

a practicing attorney. There is no question that Willick's letter portrayed Vaile as one unfit to study or practice the law by stating that he has been "found guilty" of several felonies which, if known, would prevent W&L from "willingly countenanc[ing] association with such an individual" and that his "history" of "violations of State and Federal law" was such that W&L should "reconsider his fitness for continued enrollment." Similarly, Crane's letter also portrayed Vaile as unfit to study or practice law by stating that he was "baffled" that W&L would "admit a student found to have committed multiple violations of State and Federal law" and that W&L should lose its accreditation because it admitted such a student and permitted him to continue to study the law. Thus, the Court finds that Willick and Crane's letters are defamatory *per se* not only because they impute the commission of a crime, but also because they impute that Vaile is unfit to perform the duties of a law student or lawyer and that he lacks the integrity required of such employment.

### B. Issue of Whether Letters Were Privileged Is Question for Jury

In Virginia, both truth and privilege are defenses to defamation. *Ramey v. Kingsport Publ'g Corp.*, 905 F.Supp. 355, 358 (W.D. Va. 1955). Therefore, the Court must determine whether the defamatory statements within Willick and Crane's letters were either true or privileged.

#### 1. The Truth of the Letters Is Immaterial Because the Letters May Be Privileged

It is well settled that truth is an absolute defense in an action for defamation. *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 560 (E.D. Va. 2000). A defendant need not plead truth as an affirmative defense in Virginia, however, because the plaintiff now bears the initial burden of proving the falsity of the statements in order to prevail. *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985). The statements need not be literally true for the defendant to prevail; "[s]light inaccuracies of expression are immaterial provided the defamation charge is true in substance, and it is sufficient to show that the imputation is substantially true." *Jordan v. Kollman*, 612 S.E.2d 203,

10

Case 6:07-cv-00011-NKM-BWC   Document 57   Filed 07/14/08   Page 10 of 15   Pageid#: 395

207 (Va. 2005).

Willick and Crane argue that, even if the letters do impute that Vaile committed a crime, the letters are true, or at worst, substantially true and, therefore, cannot be defamatory. Further, Willick and Crane assert that the letters merely restate the findings made by Judge Hunt in his March 13, 2006 decision. Vaile counters that he has never been convicted, much less charged, of kidnaping, passport fraud, felony non-support of children, or racketeering, and that the only crime with which he actually has been convicted is speeding.

The fact that the parties disagree as to whether or not Vaile has been charged or convicted of a crime ordinarily would create a genuine issue of material fact such that summary judgment would be inappropriate. Moreover, the question of whether a plaintiff has sufficiently proven the falsity of the defamatory statements is to be decided by a jury under Virginia law. *Jordan*, 612 S.E.2d at 207. In this case, however, the question is not whether the letters are substantially true, but rather whether the letters are a substantially accurate representation of the decision issued by Judge Hunt on March 13, 2006.

### 2. Absolute Privilege to Publish Matters of Public Record Applies to the Letters

There can be no liability for a communication that is privileged. *Warren v. Bank of Marion*, 618 F. Supp. 317, 324 (W.D. Va. 1985); *see also* 50 AM. JUR. 2d *Libel and Slander* § 255 (2008). The defense of privilege is based on public policy to further the right of free speech by protecting certain communications of public or social interests from liability for defamation that otherwise would be actionable. 50 AM. JUR. 2d *Libel and Slander* § 255 (2008). A privilege can either be absolute or qualified depending upon the circumstances of the occasion. *Warren*, 618 F. Supp. at 324.

A qualified privilege is defined as a "communication, made in good faith, on a subject matter

11

in which the person communicating has an interest, or owes a duty, legal, moral, or social, [and] is qualifiedly privileged if made to a person having a corresponding interest or duty." *Taylor v. Grace*, 184 S.E. 211, 213 (Va. 1936). The defense of qualified privilege may be defeated by a finding of malice on the part of the jury, *Gazette, Inc.*, 325 S.E.2d at 727, but the court first must decide as a matter of law if the communication itself is privileged. *Fuste v. Riverside Healthcare Ass'n*, 575 S.E.2d 858, 863 (Va. 2003).

An absolute privilege, on the other hand, precludes liability for a defamatory statement even if the statement is made maliciously and with knowledge that it is false. *Lindeman v. Lesnick*, 604 S.E.2d 55, 58 (Va. 2004). The publication of public records to which everyone has a right of access is absolutely privileged in Virginia.[3] *Alexander Gazette Corp. v. West*, 93 S.E.2d 274, 279 (Va. 1956); Restatement (Second) of Torts § 611. The privilege is not lost if the record is incorrect or if it contains falsehoods. *Times-Dispatch Publ'g Corp. v. Zoll*, 139 S.E. 505, 507 (Va. 1927). The privilege exists so long as the published report is a fair and substantially accurate account of the public record or proceeding. *Alexander Gazette Corp.*, 93 S.E.2d at 279. If the publication substantially departs from the proceeding or record, however, then the privilege is lost.

The Court finds that the absolute privilege of publication of public records applies to the letters sent by Willick and Crane. The letters contained statements that allegedly represent the finding of the United States District Court of Nevada and attached the entire March 13, 2006 opinion for further reference. Therefore, the question is whether the letters substantially departed from Judge Hunt's decision such that the privilege was lost. This question is one left for the jury, however, because reasonable people could disagree whether the letters are an impartial and accurate

---

[3]This privilege applies to media and non-media defendants alike. *See, e.g.*, Restatement (Second) of Torts § 611.

12

account of Judge Hunt's decision. *See Rush v. Worell Enters., Inc.*, 21 Va. Cir. 203, 206–07 (Va. Cir. Ct. 1990) (noting that if the facts are not in dispute and reasonable people could not differ about whether the publication substantially departs from the public record then the trial court may decide if the privilege is lost, but if reasonable people could disagree, the issue should be decided by a jury).

Accordingly, the Court will grant partial summary judgment only as to the letters being defamatory *per se*. The question of whether Willick and Crane lost their absolute privilege by substantially departing from the record and whether Vaile can prove that Willick and Crane acted with the requisite intent sufficient to be awarded compensatory and punitive damages is left for a jury to decide.

### C. Vaile Has Not Proven Emotional Distress or Outrageous Behavior

A plaintiff must prove four elements to prevail on a claim for intentional infliction of emotional distress in Virginia: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was so outrageous and intolerable that it offends against the generally accepted standards of decency and morality; (3) that there is a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress is severe. *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). The issue of whether the conduct may be regarded as so extreme and outrageous as to permit recovery is a matter of law to be decided by the court unless reasonable persons could differ. *Id.*

Vaile alleges that Willick and Crane sent three letters as a pattern of communication to inflict severe emotional distress. The three letters included the Willick letter to W&L, the Crane letter to the ABA, and an unknown communication to Willick's employer in the summer of 2006, Baker Botts LLP. Vaile claimed that the communications caused him to suffer such severe emotional

13

distress that no reasonable person could be expected to endure and that it disrupted his daily personal life, including his preparation for the bar examination. Vaile has failed to produce any evidence at this point, however, to establish any of the elements. He has not shown that he suffered any emotional distress, severe or otherwise, other than that he felt concerned with his standing in the eyes of his professors at W&L and that the letters made it difficult to concentrate on his studies. In addition, the parties learned during discovery that it was not Willick and Crane that contacted Vaile's summer employer, but rather the Clark County Office of the District Attorney, Family Support Division, for the State of Nevada in order to collect his outstanding child support obligation. Even if this communication led to Vaile's ultimate dismissal from Baker Botts, this result cannot be attributed to the actions of Willick or Craine.

Further, Vaile has not offered any evidence that he has discussed his emotional health with a healthcare professional or designated any expert to testify as to his emotional distress. The emotional distress suffered by Vaile is certainly not of the severity that no reasonable person can be expected to endure. *See Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991) (finding that plaintiff has not suffered extreme emotional distress when she fails to produce any evidence of objective physical injury caused by stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income). Moreover, the Court is unable to find as a matter of law that the two letters sent by Willick and Crane are so outrageous and extreme that they offend generally accepted standards of decency. Therefore, the Court cannot find that Vaile has made a sufficient showing to establish the existence of the elements essential to his claim for intentional infliction of emotional distress and will grant summary judgment as to this claim. *Celotex*, 477 U.S. at 322 (holding that summary judgment is appropriate if nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his claim).

## IV. CONCLUSION

For the reasons stated herein, the Court hereby GRANTS in PART and DENIES in PART the parties' cross-motions for summary judgment. The Court finds that the letters sent by the Defendants are defamatory *per se* and hereby GRANTS partial summary judgment as to Plaintiff's motion for summary judgment, but only with respect to that issue [Docket #38]. In addition, the Court finds that Plaintiff has not satisfied any of the elements of his claim for intentional infliction of emotional distress and hereby GRANTS Defendants' motion for summary judgment [Docket #41] as to this claim. The Court otherwise DENIES summary judgment on Plaintiff's defamation claims as the question of whether Defendants have lost their absolute privilege and whether Plaintiff can prove that Defendants acted with the requisite intent sufficient to be awarded compensatory and punitive damages is for a jury to decide.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

Entered this 14th day of July, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE